the Judges (Coulter, Cabell, and Fleming) delivered their opinions, seriatim.
Judge Coaltek.
In England an executor, before pro-bat, may do almost every thing which he can do afterwards, (a) t?"4’ , • p . , . . . He may take possession of the goods, pay and receive debts, make acquittances and releases of debts, take releases, sell, or give away the goods, assent to legacies, &c.; and these things do not require a subsequent probat to confirm them ; for, if he die after any of these acts done, and before probat, yet they stand good.(b) He may sue and be sued, but can» not declare until probat: — he may file a bill, and it will be good if he takes probat before trial. These are the only acts which I can discover, which require a prabat to enable him as effectually to do,as though the probat had been taken. Nay, where A, B, and C. are executors, and A. refuses, and B. and C. take probat, there A. continuelh executor notwithstanding his refusal, (the will being proved in the names of all,) so as he still may release debts due to the testator, and B. and C. cannot maintain suit in their names alone, but must join A. also : — the probat in fact enures to him, and lie may administer thereafter at his pleasure, and intermeddle with the goods, as well as. the others ; and if he survives, he will proceed with the administration, as I understand.
The reason of all which is, that there an executor may undertake the trust reposed in him, as well by acts in flays, signifying his consent to do so, as by taking probat before the ¿¡rdinary; and(c) every act of administration or intermeddling *196 with the estate, even in a slight degree, makes him executor, and he cannot afterwards refuse, but must proceed to execute the will: — he can be sued as executor, and if he pleads that he neither is executor, nor ever did administer as executor (which is the common plea to free himself in such case,) it will be found against him, on such intermeddling being proved. The goods of the testator are considered his property from the death of the testator ;(a) and before- probat he may maintain trespass, replevin or detinue, for goods taken or trespass done, after the death of the testator ; for these actions arise on his own possession.
There, too, the probat, as well as the refusal, have relation to the death of the testator. As where administration had been committed before any will proved or notified to the ordinary,.and the administrator sold some of the goods, the executor brought detinue for these goods, and recovered them.
And a refusal shall have a like relation, so that the administrator may have an action of trespass for goods taken before administration committed.
In this country, the executor is to take an oath, and give bond and security, in every case except where by the will it is dispensed with, and there too, if the court think proper to require it. Whereas, in England,' he gave no' bond, except where a Court of Chancery, to prevent fraud, should interpose and require bond, or where the testator, by his will, made an executor conditionally, that.he put in security, and then be exec-utor.(b)
The Statute of 10 Ann. ch. 2, sect. 12,(c) was the first law requiring security in this state ; and that did not require it generally, but only in such cases where the court should have reason to suspect that an executor might act fraudulently; and which provides that such a failure to give security should be construed a refusal to act as executor, and that administration cum testamento annexo might, thereupon, be granted This statute has a proviso substantially the same with that of 22 Géo. 2 ch. 5, hereafter mentioned, as to the power of the executor before probat, or administration, as aforesaid.
This latter statute (d) requires bond and security to be *197 given generally, as first above stated; and in the 21st section is the following proviso ; “ that nothing herein contained shall be construed to abridge or restrain the power of executors over their testator’s estates, until probat of the will, or administration with the will annexed, be obtained or granted ; but they may possess themselves thereof, and till then execute their trust, as fully and amply as if this act had never been made.”
This act also provides that a failure to give security shall amount to a refusal of the executor to act.
The question is, what effect this act, together with the exception, or proviso, had on sales made by the executor thus required to give bond, and who, in fact, never did give, such bond; the act of 1785 simply continuing the power of executors before probat, as heretofore.
Under the first statute above mentioned, where the court, suspecting fraud, required security, could it have been intended that the executor, notwithstanding such requisition, might sell, give away, and waste the whole estate, and in fact commit the very fraud intended to be guarded against; s,o that there would be a dry and naked administration only to be granted ? Suppose bond- to be required in England by a Court of Chancery, would a sale, after the decree, be good, the executor never giving bond ? Must not the purchaser notice this decree, and buy at his peril But here, security is required by law, which is notice to all the world. If there are two or more executors in this country, and one refuses to give bond, and the other takes probat, can the refusing executor, who never gives bond, sell and dispose of the estate, as in England he may do ?
It appears to me that the proviso must either destroy the great objects of the law, or be itself declared void as contravening those great objects; or such a construction must be given that both can, with reason and propriety, stand.
The statute in this country most materially innovates on the common law doctrines above noticed, in one great and important point, a proper consideration of which, I think, will aid much in guiding us in this enquiry.
*198 By those doctrines, an executor once intermeddling with, ..... 01‘ administering, m the smallest degree, the assets, takes upon bim the executorship, and he can never afterwards re . ^use" Here the very clause requiring bond, and the proviso under consideration, suppose an intermeddling by the executor before bond given, by the terms of which he is to account for the assets that have or may come to his possession; yet the refusal to give that bond shall here be p. refusal of the executorship, and administration may be granted; but refusal, as well as probat, relates to the death of the testator, who, on such refusal, is supposed to die intestate, as to the appointment of executors, and therefore the person named as, such stands as having never been executor. I suppose it is for this reason, probably, that a refusing executor does not join in a suit, and is not sued, in this country. From this it ■would seem to result, that a qualification, and giving bond, are annexed, in all cases, by law, (as it may in England, by the will itself,) as conditions preceding the full right of the executor finally to act; and that, consequently, a probat, according to our law, will be necessary to confirm mesne sales, &c. made before such probat.
By the pi’oviso, he may possess himself of the goods, and proceed to execute the trust. How? By. wasting and giving away the goods ? Surely not: — such acts would not be in execution, but in fraud of the trust. Our law does not direct a sale even of perishable goods, until after probat ;(a) ant* such *s ^ie multiplicity of courts, and the facility with which that may be obtained, that a sale or alienation of the effects can seldom be necessary in this country before pro-bat, But if it should be necessary, (as in some cases it may,) it must be by one who is executor, that is, who shall give bond ; for if he does not, he shall be considered as no executor s he cannot both be executor, and no executor s he cannot both accept and refuse ;(b) and the person purchasing must trust t0 subsequent act of confirmation. It is better it should be so than that the proviso should counteract the whole law.
*199 The executor may do many filings in the execution of his trust, before probat, which, though they would have been sufficient to make him executor in England, shall not here, if he refuse to give bond. He may see to burying the deceased, take possession of the goods, take -care of them until probat or administration granted ; may sue to prevent the, statute of limitation from running; may be sued, for the. same reason, &c. But if he proceeds actually to administer the estate, he must at least confirm those acts by prohat and giving bond; for, until that is done, he may refuse the trust, and is no executor; and by that alone he elects to be executor.
This is the only way in which I can reconcile the act to itself, and to the principles of the common law above mentioned. Either the proviso must defeat the law, or be itself defeated, or they must both receive such construction as that they may stand together. The law was intended to prevent frauds and embezzlement, and therefore ought to be construed liberally, so as to advance the remedy, and prevent the mischief. I can perceive little injury accruing, either way, under the construction now put; and if the powers of executors before probat are narrowed by it, and if estates may be injured through defect of power in the executor, it will but rarely happen ; whereas, if llieir powers should be as large as is contended for, the evils would be incalculable.
On the whole, I think the law, on the case agreed, is for the appellant; and that, therefore, the judgment of the Superior Court of law is erroneous, and must be reversed, and judgment entered for the appellant.
.fudge Cabell.
The question presented by the caso agreed is, whether a sale, for valuable consideration, of a slave belonging to the estate of a testator, by a person named as executor, but who never qualified by giving bond and security, is good against the executor who did qualify.
Were this case to be decided by common law principle-without regard to our act of assembly, it would not admit pf. *200 doubt. An executor derives his power from the will; and, at common law, nothing was required to invest him with the full exercise of that power, for almost every possible purpose, but his acceptance of the trust. By any intermeddling with the. estate, which amounts to a partial administration, he is considered as having accepted the trust, and taken up- . on himself the whole administration; and he becomes thereby, ipso facto, complete executor : and it is on this ground, and on- this only, that, although he may die before probat of the will, yet the acts done by him will be valid, (a)
These principles of the common law must be applied to, and must govern this case, except so far as they may have [3gen changed by our acts of assembly. It is impossible to o j ■ r . read oUr statutes upon this subject, without being struck by one most important change. To the confidence reposed in the executor by the testator, there is superadded the necessity of giving bond and security for the faithful discharge of the duties of the office. The refusal or failure to give security is expressly declared to amount to a refusal of the ex-ecutorship ; and the court shall, thereupon, grant letters oí administration, with the will annexed, to the person to whom administration would have been granted if there had been no will. (b) In this country, therefore, he is not, as in England, complete executor by a mere partial administration of the v . , 1 ...... ^estate. To make him complete executor, it is mdispensibly ^necessary that he shall qualify by giving bond and security, íhe only principle, then, which at common law gave validity to the acts of an executor who died before probat, is done away by this statute : and, if there had been no farther provision in the law, I presume the opinion would have been universal, that the acts of an executor who never qualified would not be valid against one who had qualified. But it is contended, that the twenty-second section which declares, that « the power of executors over their testators’ estates before probat of the will is not hereby restrained, but shall continue as heretofore,” is so express and positive, that it will be impossible to invalidate any acts of the executor, however *201 ruinous to the estate, and even although he should after-wards refuse or fail to give security. The certain consequence of this construction would be to defeat the great object of the legislature, the protection of the rights of creditors and of legatees; for any executor, so disposed, might waste the whole of the estate before the court could arrest his progress by granting letters of administration. Such inconsistency cannot be attributed to the legislature. A just construction will give harmony to all parts of this important statute. The interest of the estate will, almost always, require many acts to be done before an executor can qualify. Without defining any particular cases, the law therefore has wisely provided that the power of an executor before pro-bat shall remain unrestrained. The confidence reposed in him by the testator, his acceptance of the trust, and the necessity of the case, require that he have power to do whatever he might have done at common law. As he may become complete executor, by giving bond and security, and as he ought to do so after having intermeddled with the estate, the law so far regards him as executor, as to consider his acts valid for the present; and they will become irrevocably so, provided he shall perfect his character as executor, by a subsequent qualification. But, if he refuses or fails thus to1 qualify, he is considered as having altogether refused the1' executorship ; and this refusal relates to the death of the les-i tator. As to him, the will is considered as having never; been made ; and, thus, the only foundation of his authority being done away, all his acts are invalidated.
Judge Fleming.
This being a new case in this court, and of great importance, as it respects the power of an executor over his testator’s estate, before probat of the will, which seems to be governed principally by our acts of assembly, on the construction of which this controversy materially depends, I have been at considerable pains to investigate the subject; and the judges who have preceded me have gone so fully into the common law doctrine and usages in Eng *202 land,that I shall confine my remarks to our acts of assembly on the subject.
It is a well settled principle that, in the exposition of a statute, in which there appears an ambiguity, or a seeming contradiction,-we are not to garble and select any particular clause or section, but are to take the whole, and compare one clause with another, in order to discover the true meaning, intent, and policy of the legislature: and it is sometimes necessary to recur to former acts on the same subject, to aid and guide us in the discussion.
By this rule of construction, it appears to me, that the seeming conflicting.clauses in the act of 1792 may be well reconciled with each other.
The counsel for the appellee, in the case before us, in order to support the claim of his client, under a purchase of the slave in question from a nominal executor, who never qualified under the will of his testator, relied altogether on the 22d section of the act of 1792, in the following words, to' wit, “ The power of executors over their testator’s estates, before probat of the- will, is not hereby restrained, but shall continue as heretofore.” As heretofore, where 1. In Virginia, and not in England, where the most material species of our personal property is unknown to their laws, and no security is required of executors. Besides, our legislature, at the time of passing the act, must undoubtedly have pre-supposed and contemplated a subsequent qualification of the executors, by giving bond and security, taking an oath of office, &c. agreeably to the wise and salutary provisions of the act; not required by the laws of England ; which qualification never took place in the case now under consideration. The counsel, however, contended, that the said recited clause in the act of 1792, gave to the vender of the slave in question, the same powers as the common law in England gives to an executor, before probat of a will; notwithstanding the contrary provisions in our act of assembly.
To give the clause the construction contended for by Mr. Stanard, in its full latitude, would be productive of mischiefs incalculable, and totally defeat the wise and salutary objects *203 of our legislature, who provided, that if an executor fails to give the security required, administration of the estate with the will annexed, is to be committed to some other person : and so essentially necessary did the legislature consider the security to be, for the preservation of decedents’ estates, that it is enacted, “ if any court shall grant a certificate for obtaining administration of the estate of any person deceased without taking good security, the justices of such court, then sitting, shall be answerable, to the person or persons injured, for all loss or damages occasioned by taking insufficient security.”
The clause of the act, (section 41,) making it the duty of executors and administrators “ to sell all such goods of their testator and intestate, (specific legacies excepted,) as are liable to perish, be consumed, or rendered worse by keeping,” directs it to be done, “as soon as convenient after they are qualified and why not before as well as after they are qualified ? because it was supposed that the product of the sales might be unsafe in their hands, before proper security should be given.
Although executors, in the first instance, derive their powers from the wills of their testators respectively ; yet their powers are not consummated until the requisitions of out* statute are complied with and fully performed.
In all the acts I have had recourse to on the subject, as far back as the year 1748, executors and administrators, even after qualification, are forbidden selling the slaves of their testators, or intestates, unless the other part of the personal estate (having regard to specific legacies,) shall not be sufficient for paying the debts and expenses.
It seems to me that the 22d section of the act of 1792, relied on by Mr. Stanard, may be well satisfied by allowing executors, before probat, to see to, and provide for, the decent burial of their respective testators, to pay reasonable funeral expenses, to take possession of and preserve the estates of their testators from waste and embezzlement, and to do any other act, pertaining to their office, not prohibited by the &ct of assembly s and I am the more confirmed in this opi *204 nion by recurring to the act of 1711, in the tenth year of Queen Anne; in which, after providing that executors and administrators should give bond and security, and take such oaths as are now prescribed by law, it is enacted, (sect. 9th.) (£ that all probats, commissions of administration, and administration cum testamento annexo, as the several cases shall require, issued upon certificate granted according to this act, signed by the governor or commander in chief of this colony, for the time being, and sealed with the seal of the colony, or signed by such other person or persons, being one or more of the magistrates in commission of the peace, and authorized by commission for granting probats, from the governor or commander in chief of her majesty’s colony, and dominion, for the time being, and sealed with the seal of the court where the same shall be granted, shall be, and are hereby enacted and declared to be, to all intents and purposes, good and effectual inlaw, to empower and enable the executors and administrators therein named, to possess 'themselves of the estates of their testators or intestates, and to act and do all other matters and things, by virtue thereof, as any executor or administrator may, or might, lawfully do by any ways or means whatsoever.
The above clause has been recited to shew how particular our ancestors were, a century ago, with respect to the qualifications of executors and administrators.
I am of opinion, upon the whole, that the sale of the slave Hannah in the proceedings named, by Joseph Jones, an unqualified executor of Joseph Jones the elder, deceased, to George Legg, under whom the appellee claims, was illegal and void; and that, on the case agreed, in the proceedings stated, the law is for the appellant. The judgment is therefore reversed with costs ; and this court proceeding to give such judgment as the said Superior Court ought to have rendered, it is further considered that judgment be entered for the appellant.

 Office of executor, p, 34. 1

 Ibid. 34,

 Ibid,3v,

 Office of executor, p. 35.

 Ibid. 11.

 Rev, Code of 1733, p. 272.

 Ed. of 1743 p. 231.

 Acts of sect 38- Revel Code 1st vol. p.165! ’

 Office of executor, p„ 39.

 1 Salk. Wentworth's of. fice of executors, ch. 3. p. 48,49. 50.

a)Eev. Code, 1st vol. 162.