Rand, Administrator *v.* Hubbard & others, Executors.

EDWARD S. RAND, Administrator *vs.* WILLIAM J. HUB-
BARD & others, Executors.

Where the payee of a promissory note, which is made by one citizen of this State to
another citizen thereof, indorses it specially to a citizen of another State, who
dies and whose will is admitted to probate in that State before the note falls due,
and his executor, without taking administration in this State, sends the note to a
notary public in this State, with directions to demand payment of the maker at
maturity, and the notary demands payment accordingly, which the maker refuses
generally, without objecting to the notary's authority, and the notary thereupon
gives due notice of non-payment to the indorser's executors; such demand and
notice are sufficient to charge such executors; and an administrator of the estate
of the indorsee within this State, who is afterwards duly appointed here, according
to the provisions of the Rev. Sts. *c.* 62, is thereupon entitled to maintain an action
against them on the note.

THIS was an action of assumpsit, in which the plaintiff, as
administrator of the estate of John Austin, (whose domicil, at
the time of his death was in New York,) declared against Wil-
liam J. Hubbard, Russell Sturgis and Jane Hubbard, execu-
tors of the will of John Hubbard, on a promissory note made
by Henry Hubbard for $30,000, dated September 1st 1836,
payable to said John Hubbard, or order, in three years from
date, and indorsed by him to said Austin.

At the trial before *Wilde*, J. it was proved or admitted that the
plaintiff was appointed administrator of said Austin's estate in this
Commonwealth, conformably to the Rev. Sts. *c.* 62, §§ 17 – 20,
on the 25th of November 1839 ; that the note declared on was
made, as in the declaration stated, and that it was indorsed, by
the said John Hubbard, specially to the order of said Austin ;
and that the payment of $20,000, part of the principal of said
note, was indorsed thereon, and also interest in full to March
4th 1839 : That Henry Clark of Boston, a notary public, on
the 4th of September 1839, presented the note to Henry Hub-
bard, the maker, and demanded payment of the same, but that
he did not pay it : That on the same day, he (Clark) gave
notice to the defendants, by delivering to William J. Hubbard
a notification addressed to him, stating the demand on the maker
and non-payment by him ; and also by delivering to said Wil-
liam J. as the attorney of Russell Sturgis, another like notifica-

Rand, Administrator *v.* Hubbard & others, Executors.

tion addressed to said Sturgis ; and by leaving a like notification, addressed to Mrs. Jane Hubbard, at her dwellinghouse : That said demand was made, and said notice given, at the request of John Parkinson, one of the executors of said John Austin's will, which had been proved in the State of New York, but who never received letters of administration in this Commonwealth.

The defendants contended that the foregoing facts did not constitute a legal demand upon the maker, nor legal notice to them, as executors of the indorser. The judge ruled that the demand and notice were sufficient, and the jury returned a verdict for the plaintiff for $ 11,091·67.

Judgment to be rendered on the verdict, if the ruling of the judge was right ; otherwise the plaintiff to become nonsuit.

*W. J. Hubbard*, for the defendants.

*E. S. Rand*, pro se.

SHAW, C. J.* The only question in the present case is, whether the note was dishonored by a proper presentment to and demand of the promisor, and non-payment by him, when notice was given to the executors of the indorser. In deciding this question, it is necessary to consider the peculiar circumstances of the case.

The note was for a large sum, dated September 1st 1836, payable in three years from date, signed by Henry Hubbard, payable to the defendants' testator, John Hubbard, or order, and by him indorsed, not by a blank indorsement, but by an indorsement filled up, by which it was made payable to John Austin, or order. John Austin was a resident of the State of New York, and died there before the note became due, having made a will, which had been admitted to probate in that State, and letters testamentary had been issued thereon to John Parkinson and others, executors ; but the will had not been proved or filed, nor any administrator been appointed, in this Commonwealth. The note, at maturity, was placed bv Parkinson, one of the executors, in the hands of Henry Clark, a notary public of this State, who, on the last day of grace, presented the note to the

* *Hubbard,* J. did not sit in this case.

maker and demanded payment ; and upon non-payment thereof, he gave due notice to the executors of the indorser.

The question then is, whether the notary public had such an authority, that upon receiving the money and giving up the note, the promisor would have been discharged ; or whether, notwithstanding such payment, he would have been liable to pay it over again to an administrator with the will annexed, appointed by a probate court of this State.  If such payment would have been a valid discharge, then we think the presentment and demand were sufficient, the non-payment was a dishonor, on notice of which the indorser was bound.  It is not necessary to show that the person making the presentment had a right to sue, or that the party, to whom presentment was made, was liable to be sued.  The conditional undertaking of the indorser is, that in case the maker does not pay the note upon presentment at maturity to one then a *bonâ fide* holder, authorized to receive payment and give up the note, on due notice given to him, he will pay it.  The maker may have become a bankrupt, or he may have absconded, or deceased and no administrator appointed.  In none of these cases can the maker be sued.  But if there is a failure of payment, and if a refusal be given to one entitled to receive payment and give a discharge, it is a dishonor.  So if one has indorsed the note of a minor, or other person not liable to be sued, he is liable, on presentment and neglect or refusal of such person to pay ; because his obligation, by his indorsement, is to pay the note, if on presentment the maker in fact does not pay it, although the maker may not be legally bound to pay.  The question then in such case is, not whether the promisor is compellable to pay the note to the party presenting it, but whether he can safely do so voluntarily, and take up the note.  If he can, his neglect is such a dishonor as will charge the indorser in a suit rightfully brought on the same.

A notary public is accredited on account of his known public character, and demand and presentment made by a notary, are undoubtedly good and available, if he was employed, and the note was delivered to him, by the lawful holder ; the possession

of the evidence of the debt, ready to be delivered up, when that evidence is a negotiable bill or note, is evidence of the authority under which he acts, and sufficient, without further proof. *Bank of Utica* v. *Smith*, 18 Johns. 230. In this case, no proof of such authority would have been necessary to enable the indorser, if he had paid and taken up the note, to maintain an action against the promisor ; because the indorser, in that event, might strike out his own indorsement, and would then have been remitted to his original right, as payee, to maintain an action against the promisor, on the note. *Emerson* v. *Cutts*, 12 Mass. 78. *Ellsworth* v. *Brewer*, 11 Pick. 316.

Had Parkinson, as the executor of the will of the holder, proved in another State, such an interest in this note, or such a disposing power over it, that he might be considered the lawful holder, with authority to employ a notary public to present the note and demand the payment of it in Massachusetts, there being then no legal representative of the testator in this State ?

In the first place, we think this question is not governed by that class of English cases, in which it has been held that a promissory note, being a simple contract debt, is, as such, *bona notabilia* in the diocese, where the debtor lives, (Chitty on Bills, 2,) and that an *administrator* appointed in another diocese cannot demand and receive payment of such note, and give a good discharge, or otherwise intermeddle with the effects of his intestate in another diocese. *Wankford* v. *Wankford*, 1 Salk. 301. Nor is it affected by that class of American cases, which hold that an administrator, appointed in one State, cannot collect simple contract debts due in another. *Goodwin* v. *Jones*, 3 Mass. 514. *Stevens* v. *Gaylord*, 11 Mass. 256. *Vaughn* v. *Barret*, 5 Verm. 333. *Pond* v. *Makepeace*, 2 Met. 114. These are all cases of intestacy, and turn on the authority of an administrator, as contradistinguished from that of an executor appointed by the will of the testator. In such case it is held, that as an administrator derives his whole authority from the law of the State under which he is appointed, his authority cannot be extended beyond its jurisdiction ; though were it a new question, there would be great convenience and perhaps some legal ground

to decide, as between the States of this Union, that where a principal administration is granted, that is, an administration in the State where the intestate had his domicil, and by whose laws his personal property must be distributed and his estate settled, (*Dawes* v. *Head*, 3 Pick. 128,) the principal administrator should so far have authority over debts due in other States, by negotiable securities or otherwise, that a payment to him, by the c tizen of another State, before administration granted in the latter, should be a good discharge. What shall be done, when the holder of a promissory note or bill of exchange, not indorsed in blank, but specially filled up, dies before the note or bill becomes due, but the bill is to become due so soon that no administrator, in due course of law, can be appointed before its maturity, is nowhere directed. There seems to be no decision on the subject. Whether demand made and notice given by the administrator, within reasonable time after his appointment, though after the maturity of the bill, would be sufficient to hold the drawer and indorsers, or what other course should be adopted, seems nowhere to have been adjudged. It is a question to be decided when it arises.

But there is a broad and marked distinction, recognized at common law, between the authority of an administrator, deriving his powers from the appointment of the ordinary, and an executor, deriving his powers from the will, of which the letters testamentary, granted by the ordinary, are the due and proper authentication.

The property of goods is vested in the executor before probate. He may pay and receive debts ; may commence an action, though he shall not declare ; because when he declares, he must make profert of his letters testamentary, if he sues as executor, or if the will is a part of the proof necessary to his title ; but he may maintain trover before probate, for goods of the testator, taken out of his possession ; for there the profert of letters testamentary is not necessary. Com. Dig. Administration, B. 9. 5 Barn. & Ald. 745, 746.

An administrator can do nothing, though entitled to administration, before administration granted to him ; inasmuch as he

derives his authority, not like an executor from the will, but entirely from the appointment of the ordinary. But the title o: an executor is derived from the will itself, and he may perform most of the acts incident to his office, before probate. 1 Williams on Executors, 159, 160, 239. Amongst other powers, he may receive or release debts owing to the estate. Co. Lit. 292 b. *Wankford* v. *Wankford*, 1 Salk. 306. In this case, it is said by Lord Holt, that the executor, before probate, is entitled to receive all debts due to the testator, and that all payments made to him are good, and shall not be defeated, though he dies an:: never proves the will. All the testator's goods are in his actua possession, at what distance soever, and he may maintain trover for them.

That these powers, which an executor has at common law, are to be considered as somewhat modified and restrained by the laws of this Commonwealth and of other States of the Union, requiring an executor to give bond before entering upon the duties of his office, may well be admitted. Rev. Sts. *c.* 63, § 2. *Monroe* v. *James*, 4 Munf. 194. *Martin* v. *Peck*, 2 Yerg. 298. But precisely to what extent they are so restrained, must be determined, as the questions arise, upon a just construction of those statutes.

The ground upon which we place our opinion that the demand, made in this case by the notary, under the authority of Parkinson, one of the executors of Austin in New York, was sufficient, is this ; that the note was in the possession of Austin, at his decease ; that New York was his domicil, and that his estate was to be distributed and settled according to the laws of that State ; that the executors had the lawful possession of the note, with a qualified interest therein, with a right to collect it against any party in New York ; that no other person had then been qualified, by taking letters of administration, with the will annexed, in this State, to take possession of the note and make the demand ; and that therefore a voluntary payment by the promisor to the notary, he giving up the note, would have been a good payment ; and that no other person, who should subsequently be appointed administrator with the will annexed, in this

22 *

State, could afterwards have recovered on the note. It does not appear that the promisor refused to pay, or objected to paying the note on account of any want of authority in the notary to make the demand and give up the note. Had he professed his readiness to pay, and declined solely on the ground of the want of probate of the will and letters testamentary in this State, it would have presented a very different question. Notice of that fact might have been given to the executors of the indorser, that they might have availed themselves of any security in their hands, or any means in their power to secure themselves, until a proper administrator could be qualified to give a discharge.

The court are inclined to the opinion, that it was competent for these executors in New York, having the whole title and interest in the note not yet due, to indorse it in due course of business, so that an indorsee might have demanded the amount of the promisor at maturity, and on default and notice have proceeded against the indorser. In *Rawlinson* v. *Stone,* 3 Wils. 1, it was decided unanimously, on great consideration, after three arguments in the common pleas, and in the king's bench, on error, that an administrator had authority to indorse a note due to the intestate ; and both courts said it was every day's practice and the constant usage, for executors and administrators to indorse bills and notes payable to the order of their testators and intestates. It was held also, that it was unnecessary for the indorsee to make profert of the letters of administration, under which the administrator indorsed. This point seems to have ever since been considered as an established rule of the law merchant, and is so laid down in elementary treatises. *Watkins* v. *Maule,* 2 Jac. & Walk. 237. Chitty on Bills, (6th ed.) 122, 123. Kyd on Bills, (3d ed.) 107.

It would seem that a valid indorsement must transfer the whole interest and legal title to the bill, and give to the indorsee the same right to proceed against all the parties to the bill, which an indorsement by the testator or intestate, in his lifetime, would have given.

We are aware that it has been decided in New Hampshire,

*Thompson* v. *Wilson*, 2 N. Hamp. 291, and in Maine, *Stearns* v. *Burnham*, 5 Greenl. 261, that an indorsee, upon a note ndorsed by the executor of a will proved in another State, cannot maintain an action in those States.  In the former case, the note had long been due, before it was indorsed, and therefore the defendant had a right to make any equitable defence against the promisee, which was one ground relied on.  In the case in Maine, the date of the note is not given, and therefore it does not appear whether it was overdue or not, when it was indorsed. But the facts are said to be exactly similar to those in the New Hampshire case.  One of the leading arguments in the case in Maine was, that if an indorsee were allowed to sue in his own name, it prevented the setting off of demands against the testator, and displaced equities.  Now it is manifest, that if the note was not due, when it was indorsed, and was rightfully indorsed by one having authority, then the promisor could have no set-off against the promisee, nor other defence founded on equities against him.  We think, therefore, that this must have been a case where the note was overdue when indorsed.  It cannot however be denied, that in these cases the reasoning of the court goes somewhat farther than the case of a note overdue.  The main argument is, that if the indorsee of such an executor could bring an action, such executor would give to another a power which he does not himself possess ; that is, of successfully suing for and recovering a note in our courts.  But this reasoning seems not quite satisfactory.  A person, in many cases, by the execution of his power, may give a title, on which title another can maintain an action, though he could maintain none himself.  In the very case of an administrator, the ordinary, by a grant of administration, enables the administrator to maintain actions, which *he* could not maintain.  An executor, under a power to sell real estate, confers on his vendee a title and a power to bring actions, which *he* could not bring.  So an administrator under our statute, who sells real estate under a license.  The only question which would arise is this ; which administrator, where there is an administration in several States, has a right to indorse, and must the indorsement be made by an executor or administrator

appointed and authorized in the State where the debtor dwells? If the latter be held, as seems to be implied in the cases cited, what is an indorsee to do, who holds a note, with a promisor and several indorsers, living in different States ? Must it be indorsed by one so as to give a right of action against the promisor, and by another administrator, so as to give a right of action against each indorser ? If the latter be the rule, then it would follow, that the different administrators in different States might indorse to different persons, and one indorsee would have a right of action against one party and another against another on the same note. Such a rule would seem to be attended with great perplexities. If it once be held that a note may be indorsed, it would seem to follow, that upon a valid indorsement the indorsee becomes the legal proprietor and holder to all purposes, with a right, as holder, to proceed against any party, in any State, as he might upon any other good legal cause of action, in his own right ; and that any administrator duly appointed, especially the administrator appointed in the State of the intestate's domicil, and having the custody of the note, and the executor named in the will, after probate, having the lawful possession and custody of the note, not yet due, may indorse and deliver it over, and will therefore become accountable for the value, as assets, and that his indorsee will be the lawful holder of the note. If the executors, in the present case, had a power to indorse the note, we think they had authority to place it in the hands of a notary to make demand, and that payment to him would have been a good discharge.

We have thus far considered the executors, who had proved the will in New York and taken letters testamentary from the proper tribunal there, as having at least the same authority in this State, as the executor of a will before probate.

By the provisions of our law, a will proved and allowed in another State may be filed and allowed here, and shall then have the same force and effect within this State, as a will originally proved here. Rev. Sts. *c.* 62, §§ 17 – 20. By a provision in the constitution of the United States, art. 4, § 2, the citizens of each State shall be entitled to all privileges and

immunities of citizens of the several States.	Under these several provisions, we suppose it would have been competent for the executors, after receiving letters testamentary in New York, to have come here and filed the will in the probate court, and had the same allowed, and to have taken letters testamentary here, upon a compliance with the rules of law upon that subject. If so, then they had the ordinary authority of an executor before probate. A very different rule prevails, when an executor brings an action.	Then, if he sues as executor, he must be prepared with the probate of the will and letters testamentary, at the commencement of the suit ; because he must make profert of them in the first instance.	But if he merely claims property under the will, he may bring an action before probate, and it is suffi cient to produce probate of the will on trial, when that will becomes necessary, as evidence of title.	Whereas an adminis trator can commence no suit, till administration granted ; that being the foundation of his title.

It is somewhat remarkable, that in the multitude of actions upon bills and notes, there are not more direct authorities upon this subject, either in England or in the United States.

It is stated in Chitty on Bills, (6th ed.) 247, " if the holder of a bill, at the time it becomes due, be dead, it is said that his *executor*, although he have not proved the will, must present it to the drawee." The authorities cited in the margin are Pothier, Molloy, and Marius.	No decided case is referred to. Perhaps under the authorities before cited, fully recognizing the power of an executor, before probate, to receive all debts due to the testator, there could be no room for doubt in the English courts.	Still there seems to be the same dearth of authorities in respect to the case of the holder of a bill or note, who may die intestate, and which comes to maturity before administration granted.	There seems to be no adjudged case on the subject, and the elementary writers are at variance.	It is indeed stated by Marius, p. 32, (as published with Malynes's Lex Mercatoria,) that " if the party to whom a bill of exchange is made payable be dead, when it falls due, and that his executor or adminis-trator have not yet proved the will or taken out letters of admin-

istration, yet nevertheless you must not omit to make demand of the money at the just time limited in the bill ; and if you offer security to save harmless against the executors and administrators of the same party deceased, and that it be refused, you must protest for non-payment." But Molloy, Book II. *c.* 10, § 34, says, " if the party be dead to whom the moneys are made payable, and the moneys are ready to be paid, and there is no person that can legally give a discharge, yet a protest ought not to go for non-payment : The reason is, because there is no person that hath any authority, either in deed or in law, to make it ; and a notary ought not to make it : Nor does it avail, that security be offered to save him harmless against the executors or administrators." In Bac. Ab. Merchant, M. 7, it is said, " if he to whom the money is to be paid dies, there can be no protest before probate of his will or administration granted," and the foregoing passage in Molloy is cited to support the position

Roscoe, in his Digest of the Law relating to Bills of Ex change, &c. p. 147, (after referring to these passages in Marius and Molloy,) says, " it would seem that the drawer and indorsers would not be discharged, provided presentment be made and notice be given of the dishonor, by the executor or administrator, in reasonable time." Evans, however, in his Essay on Bills, &c. (Amer. ed.) 75, expresses a different opinion.

In Byles on Bills, 29, it is said, " if the holder be dead and the executor have not yet proved the will, still it seems the executor is bound to present the bill when presentable ; for his title to his testator's property is derived exclusively from the will, and vests in him from the moment of the testator's death. But, as the title of an administrator is derived wholly from the ecclesiastical court, and he has none till the letters of administration are granted, he would probably be excused by impossibility."*

The present case, it will be perceived, is decided mainly on its own circumstances, which are somewhat peculiar. The

---

\. * In Story on Bills, § 360, (published since the case in the text was decided) it is merely said, " if the holder is dead at the maturity of the bill, the presentmen should be made by his executor or administrator, if any has been appointed "

decision goes on the ground, that the notary public was furnished with the note by those who had the rightful custody and control of it ; that there was no executor or administrator in this Commonwealth, competent or authorized to demand payment ; that on demand made upon the promisor, the authority of the notary was not questioned, but the refusal to pay was general and unqualified, and seasonable notice of such refusal was given to the executors of the indorser ; and therefore that they are answerable to an administrator with the will annexed, afterwards appointed and qualified, and under such appointment authorized to bring actions in this State.

*Judgment on the verdict.*