ALBANY,
August, 1820.

BANK OF
UTICA.
  v.
SMITH.

BANK OF UTICA <em>against</em> P. SMITH.

Where a
note is in-
dorsed in
blank, and the
holder fills up
the blank, di-

THIS was an action of *assumpsit* brought against the defendant as endorser of a promissory note, dated *Utica, July,*

recting payment to be made to a particular person, merely for the purpose of *collection;* and the agent returns the note, with the protest for non-payment, to such *holder,* he may strike out the special endorsement, and make it payable to himself, so as to bring an action in his own name against the endorser.

A note made payable at the *Mechanics' Bank in the City of New-York,* was presented to the first teller of the bank, by the notary, 15 minutes past 3 o'clock, P. M. of the day on which it was payable, and payment demanded; *held,* that this was a sufficient presentment, though the bank closes at 3 o'clock ; it appearing to be the usual course of doing business in the bank, to allow that time after banking hours, for the presentment and payment of notes; and if the defendant was at the bank on the day, and offered payment, it was for him to show that fact; but he is bound to wait until the usual time.

A demand of payment of a note by a notary, or a person having a parol authority for that purpose, or the lawful possession of the note, is sufficient : and the notary may give notice of non-payment to the endorser.

The holder of a note is not bound to give the earliest possible notice of its dishonour ; all that is required of him is ordinary and reasonable diligence.

20, 1818, made by *Soulden & Smith* and *A. Van Santvoord & Co.* by which they promised, six months after date, to pay to the order of *Peter Smith*, 10,000 dollars, at the *Mechanics' Bank*, in the city of *New-York*, for value received.

On the 23d of *January*, 1819, the note was presented at the *Mechanics' Bank* in the city of *New-York*, to the first teller of the bank, and payment demanded; and it was answered that the note could not be paid for want of funds of the makers. On the evening of the same day, the clerk of the notary who made the demand and protest, put a notice into the post office directed to *P. Smith, Utica*, and at the same time, put a notice into the post office, direct to *M. Hunt*, Cashier of the *Utica Bank*, and inclosed to him a duplicate notice for *P. Smith*, the indorser. The notice was dated 25th of *January*, in the usual form, stating that the note had been protested for non-payment and that the holder would look to him for payment of the same, and was subscribed by the notary; and it was proved that it was usual to date notices on the day succeeding the demand and protest, and when the note is protested on *Saturday*, to date the notice on *Monday*. The demand of payment was made about fifteen minutes past 3 o'clock, P. M.; and the witness stated that this was the usual hour to call for notes, although the bank closes at 3 o'clock, P. M.; that the officers of the bank were all present, and they never deliver notes for protest, until after the banking hours; that payment will be received even after banking hours, if the officers are present. When the note was presented for payment, and protested, there was the following indorsement on it : " Pay to the order of *W. Fish*, Esq. Cashier, &c. *P. Smith.*" " Credit *M. Hunt*, Esq." When produced in evidence at the trial, the words " Pay to the order of *W. Fish*, Esq." were obliterated, by drawing lines through them with a pen. The indorsements on the note were made merely for the purpose of collection and of safer transmission ; and such was the mode used by the plaintiffs, in sending their notes to *New-York*. The *New York* mail, by way of *Albany*, arrived at *Utica* late in the evening of the 28th of *January*, and after the western mail had closed. The notice to Mr. *Hunt* was delivered to him on the morn-

ing of the 29th of *January ;* and about noon of the same day, the notice which had been inclosed for *P. Smith,* was directed to him at *Peterborough, Madison County,* and put into the post office at *Utica.* The letters and packages which arrived in the eastern or *Albany* mail, did not proceed in the western mail on the 29th of *January,* but lay over until the 30th. Letters from *Albany* and *New-York,* directed to *Peterborough,* are daily sent by the way of *Utica;* and the western mail leaves *Utica,* every day, except Sundays. The mail is closed about eight o'clock in the evening, and the letters post-marked of the following day, being the day of the departure of the mail. The post office at *Albany* is not a distributing office. Letters at the post office in *New York,* are marked as of the day of the departure of the mail ; and the letter to *M. Hunt* was marked the 25th of *January,* being *Monday,* and a letter deposited in the office on *Saturday* evening, would not be sent until *Monday.*

It was admitted, that the defendant resided at *Peterborough,* and that his place of residence was well known to the plaintiff. The defendant's counsel objected to the plaintiff's right to recover, 1. That the note when presented for payment, and protested, was endorsed to *W. Fish,* and had never been re-endorsed by him ; 2. That the demand and protest were out of season, irregular, and unauthorized ; 3. That the notice was, also, out of season, unauthorized and insufficient. The Judge overruled the objections, reserving the points. The defendant proved, that it was well known at the *Mechanics' Bank,* that he resided at *Peterborough ;* that the mail from *Albany,* by the way of *Utica,* arrives at *Peterborough* twice a week, on *Tuesdays* and *Fridays ;* and that a letter, post marked at *Utica* on *Friday,* the 29th of *January,* would arrive at *Peterborough* on the same day, but it must be put into the post office before the mail closes, on the 28th of *January.* That there is a mail from *Albany,* through *Cherry Valley* to the westward, two or three times a week, and that the defendant receives letters and papers from *New-York,* at all seasons, both by the way of *Utica* and *Cherry Valley ;* that the distance from *Albany* to *Peterborough,* by the way of *Cherry Valley,* is about 15 miles less

ALBANY,
August, 1820.

BANK OF
UTICA
v
SMITH.

than by the way of *Utica*. That there is a mail from *Madison*, on the *Cherry Valley* road, every *Friday*, to *Peterborough*, and a letter from *Albany*, on that road, in the mail on *Thursday*, would reach *Peterborough* on *Friday*. That there was, also, a mail from *Morris Flatts*, on the *Cherry Valley* road to *Peterborough*, every *Thursday*; and a letter which left *Albany* on *Wednesday*, on that road, would arrive at *Peterborough* on *Thursday*. It appeared that the notice received by the defendant was dated *January* 25th, 1819, post marked at *New-York*, the 23d, directed to *P. Smith*, *Utica*, and re-directed to him at *Peterborough*, on the 29th of *January*, and post marked at *Utica* on the 30th of *January*. There is a daily mail from *Albany* to *Utica*, which closes in the evening, but not at a fixed hour, as the mail is not made up until the other mails arrive, and are distributed.

The cause was tried at the *Oneida* circuit, in *June*, 1819, and the jury found a verdict for the plaintiffs, subject to the opinion of the Court on a case containing the above facts.

*N. Williams*, for the plaintiff. 1. The demand of payment was duly made, by a person who had authority for that purpose. Any person, as agent of the holder, and who has the note in his possession ready to be delivered up, when paid, may demand payment of it. (1 *Dallas Rep.* 193. 7 *Mass. Rep.* 486, 487.) *W.*, who made the demand, was a clerk to the notary of the bank in which the note was deposited for collection, and the protest is made in the usual and established form.

2. The demand was made in due time, according to the established commercial usage; it was within fifteen minutes after the usual banking hours, when all the officers of the bank were present. (*Chitty on Bills*, 286. 7 *East*, 385. 1 *M. & S.* 23. 6 *Mass. Rep.* 524. 12 *Mass. Rep.* 403. 13 *Mass. Rep.* 356. 14 *Mass. Rep.* 303.) A personal demand on the makers was not necessary. It was sufficient to inquire at the bank, the place appointed for payment, to know whether the makers had the money there; and the note was deposited in the same bank for collection. (*Saunderson* v. *Judge*,

2 *H. Bl.* 511. 7 *Mass. Rep.* 486. 12 *Mass. Rep.* 403. 13 *Mass. Rep.* 556. 15 *Mass. Rep.* 436.)

3. As to notice ; it is a question of reasonable diligence, compounded of law and fact, and must depend on the circumstances of the case. (*Taylor* v. *Bryden,* 8 *Johns. Rep.* 173.) The holder is not bound to send the notice until the next day after the protest. (2 *Caines' Rep.* 343. 3 *Bos. & Pull.* 599.) The objection is reduced to this, that had the notice been sent from *Albany* by another route, it might, *possibly*, have reached *Peterborough* sooner. But letters are as often sent to *Peterborough* by the way of *Utica*, as by *Cherry Valley*, or any other way. There is no fixed rule on the subject. It was proper for the agent to send the notice to his principal, that he might give notice to the endorser. (2 *Johns. Cases,* 1. 3 *Johns. Cases,* 89. 3 *Bos. & Pull.* 599.)

4. It is objected, that there having been a special endorsement by the cashier of the plaintiffs, directing the payment to be made to *W. Fish*, the plaintiffs cannot maintain an action on the note without an endorsement to them by *Fish;* or, in other words, that the plaintiffs had no right to strike out the special endorsement when the note was returned to them. The endorsement by the defendant was in blank, and was filled up by the plaintiffs, for collection merely, and for greater security. They continued to be the owners of the note. The distinction between blank and full endorsements is to be met with in all the books. (*Chitty on Bills,* 148, 149. 159. *note.* (*Amer. ed.*) 1 *Dallas,* 193. 2 *Dallas,* 147. *Shower,* 164. 10 *Johns. Rep.* 27. 11 *Johns. Rep.* 52. 1 *Peters' Rep.* 471. 15 *Mass. Rep.* 436.) In the case of *Dugan* v. *The United States,* (3 *Wheaton's Rep.* 172.) the Supreme Court of the *United States* decided, that the bill having been returned to the last endorser by his endorsers, was presumptive evidence of their having acted merely as his agents, and that when the case of agency is established, a receipt or re-endorsement of the bill, would be as unnecessary, as it would be unusual ; that if a person who has endorsed a bill, for value received, or for the purpose of collection, comes into possession of it again, he will be regarded, unless the contrary is proved, as the *bona fide* holder and proprietor of the bill, and is entitled to recover, not-

withstanding there may be on it one or more endorsements in full subsequent to the one to him, without producing any receipt or endorsement back from either of such endorsers, whose names he may strike from the bill at his pleasure.

*Talcot*, contra. 1. The plaintiffs had no legal right to strike out the special endorsement to *Fish*, and recover in their own names as endorsees. All the cases cited on the other side, are those in which the endorsements subsequent to that which conveyed the title to the plaintiff, were allowed to be struck out. The engagement arising from a blank endorsement is, that any *bona fide* holder of the bill or note, may fill up the blank as he pleases; when that is done, it will have the same effect as if it had been filled up originally by the endorser. When the blank is once filled up, the power is spent, and the endorsement cannot be altered without discharging the endorser. When once filled up, it is as much the act of the endorser, the defendant, as if he had originally written it in full himself. If the holder cannot strike out an endorsement written in full, neither can it be done after the blank has been filled by the agent of the endorser, under the blank authority. (*Tyler* v. *Binney*, 7 *Mass. Rep.* 481. *Chitty on Bills*, 204.) The whole legal property in the note was transferred to *Fish*, who alone could sue on the note. (*Clerk* v. *Pigot*, 1 *Salk.* 126. S. C. 12 *Mod.* 193.) The case of *Clerk* v. *Pigot* is recognized by the Supreme Court of *Pennsylvania* in *Gorgesat* v. *M'Carty*, (2 *Dallas Rep.* 144. 147.) which has been cited. (2 *Burr. Rep.* 1227. 2 *Str.* 955.) Even if the note had been endorsed to *F.* as a *trustee* merely, to receive the money for the use of the plaintiffs ; yet *F.*, as the person having the legal title and interest, alone could bring the action. (*Lovell* v. *Everston*, 11 *Johns. Rep.* 52. *Chitty on Bills*, 139. 287, 288.) Though the plaintiffs had the equitable interest, they could not sue. (*Evans* v. *Cramlington*, *Carthew Rep.* 5.) In *Nevins* v. *Degrand*, (15 *Mass. Rep.* 436.) which has been cited, when the first suit was brought on the bill which had been accepted with a full endorsement, but which endorsement, before payment, was erased, the Court held, that *Cabot* could not fill up the endorsement

so erased, and make it payable to himself, so as to maintain an action in his own name, though they, afterwards, allowed the original endorsers, whose names had been erased, and who had since become the owners of the bill, by paying *C.* the amount, to restore their names as endorsers, and bring their action against the acceptor.

2. The demand of payment was out of season. Presentment should be made, in all cases, at the usual hours of business. (*Chitty on Bills*, 286. (*Am.* ed.) *Barclay* v. *Bailey*, 2 *Campb. N. P. Rep.* 527. 2 *Taunt. Rep.* 223, 224.) It is said here is a particular usage of the banks of *New-York*, which creates an exception to this general rule. This usage was not sufficiently shown; it ought to be proved and brought home to the knowledge of the party. But can a bank create an usage to vary the general law of merchants ? The contract is, that the maker of the note will be ready at the day and place appointed, to pay his note ; not that he will pay money into the bank, to be applied by its officers for the payment of the note, if deposited there. He is not bound to remain after banking hours ; a presentment, therefore, after the doors of the bank are closed, though the officers may be present for their own concerns, is too late. In *Elford* v. *Teed*, (1 *Maule & Selw.* 28.) a bill payable at a particular banking house, was presented by a notary's clerk, after the banking house was shut, to a servant at a private door. The Court of *K. B.* held that this was not a sufficient presentment, and that the circumstance of the bill having been presented by a notary, was not sufficient to authorize the jury to presume that it had been before duly presented within banking hours. Lord *Ellenborough* said, " There was not any text writer upon whose authority a presentment of a bill by a notary at a house of business after it was closed could be sustained. It is laid down by *Marius*, (2d *ed.* 187.) that it must be made during times of business, at such seasonable hours as a man is bound to attend, by analogy, to the *horæ juridicæ* of the courts of justice."

It is said that the defendant ought to have shown that he was at the bank on the day, ready to pay the note. But it is incumbent on the plaintiff to allege and prove every thing necessary to entitle him to recover ; and it is the duty of

the holder to show that he was at the bank and demanded the money of the defendant. (13 *Mass. Rep.* 559.)

Admitting, however, that the demand was made in season, yet it was not made by a person authorized to require payment. The note being specially endorsed to *F.*, he alone, or some person authorized by him, could make a demand ; (*Chitty on Bills*, 265. 1 *Esp. N. P. Cases*, 115. 7 *Mass. Rep.* 487.) and the authority must appear. Here was no authority, verbal or written. It is said, that the notary's clerk who had the note, was, *prima facie*, a *bona fide* holder : true, if the note had been endorsed in *blank ;* but not when endorsed to *F.*, for the special endorsement repels that presumption. Possession of a bill or note specially endorsed, is no evidence of property in the holder. (2 *Dallas*, 146. per *Bradford*, J. *Doug.* 611.) The demand being made by a notary's clerk, is immaterial ; for a notary has no more power to demand payment of promissory notes or inland bills, than any other person. A protest by a notary is not necessary except in case of a foreign bill of exchange. The demand was made not by the request of *Fish*, but by the direction of *Hunt.*

3. The notice of the non-payment of the note to the defendant was irregular, and insufficient : It was sent by a person not authorized to give it. Notice should have come from the holder, or some person having an *interest* in the note. (*Stewart* v. *Kennett*, 2 *Camp. N. P. Rep.* 177.) In *Tindal* v. *Brown* (1 *Term Rep.* 167, *per Ashurst*, J. and *Buller*, J.) it was decided, that the notice must come from the holder of the note ; that what is a reasonable notice of the dishonour of a bill or note, was a question of law. (11 *East*, 114. 117.) *Notice* means something more than *knowledge*, for the holder may give credit to the maker or acceptor. Lord *Eldon*, in the case *ex parte Barclay*, (7 *Vesey*, 597.) said, that the settled doctrine was according to the language of Mr. Justice *Buller*, in *Tindal* v. *Brown*, and that it had been acted on ever since. (*Bayley on Bills*, 71. 83. *Kyd on Bills*, 125, 126. *Chitty on Bills*, 239. 14 *Mass. Rep.* 116. 120.) But admitting that the notary had authority to make the demand, and give the notice, it was, nevertheless, insufficient, because it was not properly directed ; and it is not shown that any attempt was made to ascertain the defendant's place of residence, and to

send the notice to him by the most direct route. The rule as laid down by Lord *Alvanley*, in *Haynes* v. *Birks*, (3 *Bos. & Pull.* 599.) is not denied; but that rule was adopted for the convenience of *bankers* in *England*; if the matter were *res integra*, it might be shown that the inconvenience of the rule was so great as far to outweigh that consideration. Suppose the *maker* and *endorser* of a note reside in *New-York*, and the *holder* of it, at *Calcutta*, sends the note to his agent in *New York* to be collected, who demands payment, which is refused; is the agent then, according to the doctrine of Lord *Alvanley*, and the Court of *C. B.*, to send the note and protest to his principal in *Calcutta*, that he may give notice to the endorser in *New-York?* Besides, in this case, *Fish* was the holder, or principal, and the notary should have sent the note and protest to him, that he might give notice to the defendant. The notice ought to have been sent by the way of *Cherry Valley*. It was proved that had it been sent direct to *P.* and by that route, the defendant would have received it two days sooner. Where there are two ways of sending a notice, by one of which it *may* be received sooner than by the other, the endorser is entitled to insist on having it sent by the shortest and most expeditious route.

*Williams*, in reply, said, that a blank endorsement makes a bill or note transferable by mere delivery; and is an authority to the holder to fill it up. If he fills it up merely for the sake of collection, and not with a view to transfer his property in the note, and his agent returns the note to him, he may strike out the special endorsement, and insert his own name for the purpose of bringing an action as endorsee. The case of *Dugan* v. *The United States* was in point. The Court there looked into the real nature and truth of the transaction. It is not pretended that the plaintiffs in this case, are not the true and lawful owners of this note. Why, then, require that the suit should be brought in the name of *Fish*, a mere agent, who has no interest whatever in the note? The inconveniences of such a rule may be very great.

SPENCER, Ch. J. delivered the opinion of the Court.— The defendant is sued as *first* endorser of a note for 10,000 dollars, drawn by *Soulden & Smith* and *A. Van Santvoord*, to the defendant or order, dated *July* 20, 1818, and payable six months from the date, at the *Mechanics' Bank* of *New-York*. Over the name of *Peter Smith* there was written, when the note was presented at the *Mechanics' Bank*, " pay to the order of *W. Fish*, Esq. Cashier, &c." This endorsement was thus filled up for the safety of transmission, by the plaintiffs' direction, who were the owners of the note, *Fish* never having had any interest in it. The endorsement was afterwards erased, and the note directed to be paid to the plaintiffs. This gives rise to the first question : whether the plaintiffs had a right to erase the endorsement to *Fish*, and to fill it up to themselves ? It appears clearly that *Fish* never had any interest in the note. It was sent to him merely to collect, and not being paid, he sent it back. He was the mere servant or agent of the plaintiffs ; and it is, I think, clearly settled, that in such a case the plaintiffs had a right to strike out the transfer, and make the bill payable to themselves. (3 *Wheat. Rep.* 182. 1 *Dall. Rep.* 193. 2 *Dall.* 147. 15 *Mass. Rep.* 436. 1 *Show. Rep.* 164.)

2. The bill was properly presented at the bank for payment ; and although it was a quarter of an hour after the usual time for closing the bank, as to other business, it was yet within bank hours ; for it appears that these 15 minutes, according to the general course of doing business at this bank, was the usual and accustomed time for such presentments ; and of the course of doing business there, the defendant ought to have informed himself. (7 *East Rep.* 385. 1 *Maule & Selw. Rep.* 28. 3 *Bos. & Pul.* 599.) If the defendant had been at the bank, and offered payment, or made inquiries for his note, it was for him to have shown it ; but it was his duty, also, to have waited until the usual time.

3. Notice of protest and non-payment was given by *J. T. Irving*, notary public, to the defendant, with notice that the holder looked to him for payment.

It is objected, that *Fish* only could make demand or give notice.

The note was in the possession of the notary when pay-

ment was demanded.  He received it from *Fish*, who had full power to deliver it to him for that purpose.  A demand of payment by an agent having any parol authority, or the mere possession of the paper, is sufficient.  (7 *Mass. Rep.* 486. 9 *Mass. Rep* 423. 427.)  It is true, that where it is necessary for the party paying to have evidence of the authority of the person demanding payment, to justify him in making the payment, then the authority ought to be in writing, and properly authenticated ; but where the possession of the evidence of the debt denotes the authority, and is ready to be surrendered on payment, it is not necessary to have any special authority.  Besides, although the law does not require the intervention of a notary to make a demand of payment, or to give notice of the non-payment of a note, yet these officers are in the practice of doing so ; and being commissioned by the government, their official acts are of a more solemn nature than those of individuals :  For the same reasons, a notice of non-payment by a notary is, also, available ; and it is the constant and uniform course, sanctioned by a long and continued usage.

4. The last point is equally untenable.  The transmission of the notice to the defendant at *Peterborough*, by the way of *Utica*, under cover to *Hunt*, cashier of the bank of *Utica*, was sufficient. It is in proof that letters sent to the defendant went through the post office in *Utica*. It appears that letters for the defendant from *New-York*, are sent both by the way of *Utica* and by the way of *Cherry-Valley*, indiscriminately, and that in point of fact, the notice was not delayed by being put under cover to Mr. *Hunt*.  This presents a question of due diligence ; and even if it be admitted that the notice would have reached the defendant a day or two sooner, had it been sent by the way of *Cherry Valley*, it does not prove that there was *laches*, or unreasonable delay in giving notice.

I consider the mode adopted in this case, in the same light as if the notary had sent a notice directed to the defendant, *via Utica ;* in which case, I can conceive no possible objection to the notice, for it is expressly in proof, that it was as usual to send letters to the defendant by the way of *Utica*, as by the other route.  The law does not exact of the holder of a note or bill, that he shall give the earliest

possible notice of its dishonour. It requires of him only an ordinary and reasonable diligence. Suppose notice is to be sent from *London* to an endorser of a bill in *New-York*, of its dishonour, and that two vessels set sail on the same day, one of which sails faster than the other, would not a notice sent by the slowest sailer be well sent ? Yet the probability that it would arrive sooner, had it been transmitted by the other vessel, would be quite as strong as that this notice would have reached the defendant sooner, had it been sent by *Cherry Valley*. It would be alarmingly critical to hold the party bound to give notice to such rigid rules; and I am not apprized of any case in which the Courts have adopted them. We require, when notice is sent by post, that it be sent to the post office in the town where the party resides ; but where he is nearer to a post office in an adjoining town, and more frequently resorts there to transact his business, we have said, that notice was well directed to such post office. The endorser must have the chance of receiving notice in a usual and customary manner, and here he had that chance.

WOODWORTH, J. concurred on all the points raised in this cause, excepting on the question of notice, which he considered defective. *Smith* resided at *Peterborough*, in *Madison* County ; it was competent for the holder to send notice through the post office, directed to the post office nearest to the defendant, according to 16 *Johns. Rep.* 221. There were two routes from *New-York* to *Peterborough*, one by the way of *Cherry Valley*, the other by the way of *Utica ;* and although it appears the defendant received letters from *New-York* by both routes, it is in proof, that the distance by the way of *Cherry Valley* is considerably less than by the way of *Utica*, and *that letters coming from New-York by the Cherry Valley route, reach Peterborough as soon as by the way of Utica, even if they do not lay over at Utica.* In the present case, if the notice forwarded to the cashier at *Utica* had not lain over one mail at that place, (as it did by reason of the lateness of its arrival,) it would have arrived at *Peterborough* on *Friday*, but it did not arrive until *Tuesday* following. The evidence of *Bunce* shows, that had the notice been sent

by *Cherry Valley*, it would have arrived as early as *Friday*, and thereby apprised the defendant of his liability, three days sooner. If the holder seeks to charge the endorser, by notice through the post office, and there are two routes, he cannot arbitrarily, or for his own convenience, designate a particular route by which the mail is conveyed, unless he can show that the notice arrived as soon as if sent by the other : he has not only failed to do this, but it expressly appears, that had the notice been directed to the defendant at *Peterborough*, it might have been received at an earlier day. He considered it no answer to say, that the defendant received letters by both routes. The forwarding of letters from the post office at *Albany*, sometimes by *Utica*, and sometimes by *Cherry Valley*, could not vary the duty of the holder at *New-York*; his course was distinctly marked and defined. Had the notice sent been directed to *Peterborough*, it is at least equally probable it would have been forwarded by *Cherry Valley*. The holder, by his act, deprived the defendant of the chance of receiving the earliest information, and he cannot complain, if for this cause, his notice is considered bad. It is not the application of a new and rigorous rule ; but requiring the observance of a rule well established ; and as the holder by his own act has chosen to depart from it, he has thereby discharged the endorser.

Judgment for the plaintiffs.