JOSEPH H. ALLEN & al. *versus* ENOCH M. AVERY.

Soon after the usual business hours of a bank, but before its officers had left, a notary public, at the request of the cashier, presented a note there due on that day, to pay which no funds had been provided by the maker, and demanded its payment; which being refused, the note was protested: — *Held*, that the demand was well made to charge the indorsers.

A note, payable in Boston, was there protested for non-payment; the indorsers residing in this State, a notice of its dishonor to the first indorser was transmitted to the second, who forwarded the same, properly directed, by the earliest mail of the next day: — *Held* to be a seasonable notice, each indorser of a note being entitled to one day to notify his preceding indorser.

If a note be made payable at either bank in a city, where there are numerous banks, the holder may present it for payment at either, without notice to the maker at which he will demand its payment.

REPORTED by CUTTING, J.

ASSUMPSIT on a promissory note of Foster & McFarland, made payable to the order of the defendant, and by him indorsed, dated Richmond, October 20, 1854, for eight hundred dollars at either bank in Boston, in three months. The note is also indorsed, " pay to Charles Sprague, Cashier, or order. Otis Kimball, Cashier."

The writ is dated February 16th, 1858.

The plaintiffs offered the protest of the notary public, by which it appears that, on the 23d day of January, 1855, at the request of said Sprague, cashier of Globe Bank of Boston, he went with the original note " to the Globe Bank, where the promisor was notified to pay the same, and inquired if funds had been provided at said bank to pay said note, and was answered that there were none; and the time limited in said note, and grace, having elapsed, notice was sent by him to the promisor, demanding payment, and to the indorser, requiring of him payment, also, by mail, to Bath, Maine, enclosed to Otis Kimball, cashier."

Otis Kimball, for plaintiff, testified that, at the maturity of said note, he was, and still is, cashier of the City Bank, Bath. The note was left at the bank for collection, and he seasona-

bly forwarded the same to the Globe Bank, which acts as the agent of the City Bank, in Boston. After the note had matured it was returned to him under protest. He received the notices named in the protest, and put them into the post office, in season to go by the first mail after he received them, one directed to the principal and the other to the indorser, at Richmond, where both of them resided. Could not remember the day he received the notices. It was in January, 1855. There was then but one mail daily. The mails were often interrupted.

The deposition of *Henry Clark*, the notary public, protesting said note, taken at the request of the plaintiff and filed in Court, was put into the case by the defendant; the material parts of which are, in substance, that during the month of January, 1855, and long before, he was a notary public, at Boston; that this note, (the one in said suit being presented,) was protested by him on the 23d day of said January, at the request of the cashier of the Globe Bank; that he demanded payment at bank, which was refused; that he sent notices of the demand and non-payment to the maker and indorsers, enclosed in an envelope addressed to Otis Kimball, cashier, &c., Bath, Maine, requesting him to forward them to the parties. The notices were deposited in the post office in Boston on the day they were written. The notices described the note, stated it was unpaid and protested, and that the holder looked to him for payment. It was between two and three o'clock that the note was presented for payment; generally make demand soon after two o'clock.

On *cross-examination*. The note was presented after two o'clock of that day; testifies from his record as to the day, having no other means of ascertaining it; has no recollection about it. The record was made on the day or the morning, before the protest was delivered; kept a record of letters delivered at the post office; the hour of closing the bank was then at two o'clock; at that time the banks stopped business for the day, receiving and paying money. Some of the officers usually remain after that hour.

The case was thereupon withdrawn from the jury, the parties requesting that the evidence should be reported for the decision of the full Court; with authority to render judgment on nonsuit or default according to the legal rights of the parties, and to draw inferences of fact, as a jury might.

*F. D. Sewall*, (with whom was *Bronson*,) argued:—that the certificate of the notary, with the testimony of Kimball, proved that all the steps necessary to charge the indorser had been taken; and cited R. S., 1857, § 4, c. 32; Act relating to protests of bills of exchange, of the laws of 1858; *Lewiston Falls Bank* v. *Leonard*, 43 Maine, 144; *Ticonic Bank* v. *Stackpole*, 41 Maine, 302.

The notices were properly sent to the last indorser. *Warren* v. *Gilman*, 17 Maine, 360.

The testimony of the notary removes any possible doubt that a demand was well made. *Berkshire Bank* v. *Jones*, 6 Mass. 524; *Woodbridge* v. *Bingham*, 13 Mass., 556; *Gilbert* v. *Dennis*, 3 Met. 405; Story on Prom. Notes, § 43; *State Bank* v. *Curned*, 2 Peters, 543; *Phipps* v. *Chase*, 6 Met., 491.

The Globe Bank being the holder of the note and authorized to deliver it up on payment, no special demand was requisite. *Warren* v. *Gilman*, 17 Maine, 36; Bayley on Bills, 263. The maker was entitled to the *whole* time of the business hours of the bank, in which to make the payment on the last day of grace; and a demand, immediately upon the expiration of the time for business, and while the officers of the bank were present was sufficient. The following authorities were cited, or referred to in argument:—*North Bank* v. *Abbott*, 13 Pick., 265; *Church* v. *Clark*, 21 Pick., 310; *Page* v. *Webster*, 15 Maine, 549; Chitty on Bills, 367; Story on Prom. Notes, § 232.

*Larrabee*, (with whom was *Tallman*,) for the defendant, contended that no sufficient demand of payment had been proved; nor any such notice of non-payment to the defendant shown as would render him liable as indorser. The testimony

of Kimball was uncertain and unsatisfactory. He cannot fix the date of the reception of the notice, or when put into the post office to be sent to defendant. He testified rather from what was his usual practice, in like cases, than from any distinct recollection of this particular case, which, in *Warren* v. *Gilman*, 15 Maine, 70, was held to be too uncertain to fix the liability of a party.

The notice of the notary does not show due presentment and dishonor. In his deposition, the notary states that he has no recollection of the transaction and only testifies from his record. The notice given to the indorser, as recited in the protest, is clearly insufficient. It does not contain any notice of the dishonor of the note or of its non-payment. It is only notice to the indorser requiring payment. It does not contain a notice of what all the authorities concur in considering indispensable, namely:—due presentment and dishonor. Story on Prom. Notes, pp. 350 and 351, and notes 2 and 3 and cases there cited; *Gilbert* v. *Dennis*, 3 Met. 495; *Pinkham* v. *Macy*, 9 Met., 174; Byle on Bills, 213, 215.

The case fails to show that the note was presented for payment during usual banking hours. No date is given when the note was sent to, or received at the Globe Bank. For aught that appears, it may have been after the business hours of the 23d of January, when it was too late to demand payment.

The note having been made payable "at either bank in Boston," where there is a great number of banks, the maker was entitled to due notice at which bank the note would be presented. *North Bank* v. *Abbott*, 13 Pick., 465.

A presentment and demand after banking hours,—"after the bank had stopped paying out and receiving," as the notary testifies, is not a seasonable demand to hold the indorser. *Parker* v. *Gordon*, 7 East, 385; *Elfred* v. *Teed*, 1 M. & S., 28; Byle on Bills, 166.

The case of *Flint* v. *Rogers*, 15 Maine, 67, will be found, on careful examination, not to be in conflict with the authorities just cited, that decision being based upon the special

facts in that case, without intending to change the rule of law as laid down by the authorities last cited.

In the case at bar, there is no evidence who were in the bank, on whom the demand for payment was made, or whether any one was there authorized to act for the bank. In *Flint* v. *Rogers*, the cashier was in the bank to give an answer, and, if the funds had been provided, to have applied them to the payment of the note.

The opinion of the Court was drawn up by

APPLETON, J.—The note, on which it is sought to charge the defendant as indorser, was lodged with the City Bank, Bath, for collection, and, by its cashier, was sent to the Globe Bank, Boston, where, not being paid at maturity, it was protested, and, on the same day, notice of demand and non-payment to the indorser, was forwarded by mail, enclosed to the cashier of the City Bank, who was the last indorser, by whom it was transmitted, the next mail, to the defendant, directed to him at his place of residence.

The counsel for the defendant interpose various objections to the plaintiffs' right to recover.

1. It is insisted that the protest, being after banking hours, is too late.

From the deposition of the notary, it appears that, a few moments after banking hours had closed, but while the bank was open and its officers were in attendance, at the instance of its cashier, he demanded payment, which was refused, and, being informed there were no funds provided, he protested the note, &c.

The maker of a note payable to a bank, has, unless in case of demand and refusal on the last day, in banking hours, the whole of the day in which to make payment. If not paid during banking hours, the note is dishonored. *Church* v. *Crane*, 21 Pick., 310. A presentment of a draft, payable at a bank, to the cashier, on the day of its maturity, but after business hours, and a refusal of payment, because the acceptor has provided no funds, is a sufficient demand to charge the in-

dorsers. *Flint* v. *Rogers,* 15 Maine, 65. Presentment of a bill out of the usual hours is sufficient, provided somebody be at the place and gives an answer. *Henry* v. *Lee,* 18 E. C. L., 273; *Bank of Utica* v. *Smith,* 18 Johns., 230.

2. It is objected that the protest does not show a sufficient notice to charge the indorser. But, if so, the defendant introduced the deposition of the notary public, by which it appears that, by the next mail after the protest, he sent to the last indorser notice of the demand and non-payment, thus bringing the case within that of *Gilbert* v. *Dennis,* 3 Met., 495.

3. The notice of the demand and non-payment was sent on the day of the protest, by mail, to the cashier of the City Bank, who testifies that, by the next mail, he forwarded the same, properly directed, to the defendant. Each indorser to a bill has one day in which to notify his preceding indorser. The notice to defendant was seasonably forwarded.

4. It was held, in *Page* v. *Webster,* 15 Maine, 249, where a note is made payable at either of the banks of a city, that the holder is not bound to give notice to the maker, at which of the banks the note will be presented for payment, when it falls due. The same question again arose in *Langley* v. *Palmer,* 30 Maine, 467, and received a similar decision. This question was not regarded, in *Page* v. *Webster,* as having been decided differently in Massachusetts; the case of *North Bank* v. *Abbott,* 13 Pick., 465, where a different opinion was intimated, not being deemed an authoritative decision of the question. But, in this case, it appears from the protest annexed to the deposition of the notary public, which the defendant offered as evidence, that the Globe Bank was where the promisor was notified to pay the note. The case is therefore not at variance with that of the *North Bank* v. *Abbott.*

*Defendant defaulted.*

TENNEY, C. J., and RICE, CUTTING and GOODENOW, JJ., concurred.