FIRST NATIONAL BANK OF MARSHALLTOWN v. OWEN *et al.*

1. Bill of exchange: PRESENTMENT AFTER BUSINESS HOURS. The presentment of a bill of exchange by the cashier of a bank at whose counter it is payable, to the acting teller thereof, though after business hours, is sufficient.

2. —— NOTICE OF DISHONOR : BY POST. The drawer of a bill resided five miles from R. and six miles from I. The cashier of the bank where the bill was payable, directed by mail, notice of dishonor to him at the former place, which had been his nearest post-office address, but it afterward appeared that at this time the post-office there had been discontinued, and its business transferred to I., the next nearest post, where letters were received and distributed that had been directed to R. *Held*, that the notice was sufficient to hold the drawer.

3. Trustee: COMPENSATION OF. Where a creditor took from his debtor a deed to his farm, and gave him a memorandum to the effect that it was to be sold and the proceeds applied to the payment of the grantee's claim after discharging prior liens, the surplus, if any, to be paid to the grantor, it was *held*, that such creditor was not entitled to a commission or compensation for making sale of the farm, nothing appearing to show that either party contemplated such charge at the time of the transaction.

4. Bill of Exchange: DAMAGES FOR NON-PAYMENT ; STATUTE. Section 1812 of the Revision of 1860, providing for the rate of damages to be allowed upon the non-payment or non-acceptance of bills of exchange, relates to foreign and not inland bills.

5. Trust: WHO OCCUPIES TRUST RELATION. A creditor who takes a conveyance of real estate from his debtor under the arrangement that he is to sell the same, and with the proceeds first discharge certain liens thereon, then his own individual claim, and deliver the surplus to the debtor, does not occupy such a trust relation as will prevent him from realizing the full amount of one of such liens which he purchased at a discount before such conveyance was executed to him, but which was not actually transferred to him until thereafter.

6. Usury: CONTRACT NOT USURIOUS. An agreement on the part of a purchaser of a lot of sheep, to pay therefor, in addition to a certain sum of money agreed upon, "two pounds of wool per year for each sheep so sold," is not necessarily usurious.

7. Bill of Exchange: DEFENSE BY DRAWER: APPLICATION OF FUNDS. Where a bank, being the holder of a bill of exchange, levied under a judgment on another claim, upon certain property of the acceptor, which being claimed by third parties was released by the sheriff upon the failure of plaintiff to furnish the indemnity bond demanded by him, and afterward sold by the debtor as his own property and a check received by him therefor on said bank; *held*, that these facts did not make it incumbent on the bank to control the application of the funds represented by said check thus held by the acceptor, to the payment of said bill of exchange, nor enable the drawer to claim as a credit thereon the amount of such check.

*Appeal from Marshall District Court.*

WEDNESDAY, JULY 31.

PLAINTIFF claims $3,000 and interest from March 13, 1865, as a balance due on a bill of exchange of that date, for $7,430.55, due in sixty days, drawn by Owen on Daniel Andrews, payable to Isaac R. Andrews, or bearer, duly accepted, and payable at plaintiff's counter.

The action was against the drawer, and the administrators of the acceptor. Answers, setting up certain equitable defenses; the case was transferred and tried according to the first method; judgment for plaintiff, December 18, 1866, in the sum of $1,785.87 against the drawer, and against the acceptor for $2,664.99. Both parties appeal.

*Boardman & Brown* for the plaintiff.

I. The protest was sufficient.

1. A demand after business hours is good if any of the officers of the bank are present and make answer. 1 Parsons on Bills, 419; *Flint* v. *Rogers*, 15 Maine, 67; Bank of Syracuse, 17 New York, 48; *Bank of Utica* v. *Smith*, 18 Johns. 230.

In this last case, the paying teller being also a notary, presented the check to himself outside the bank, its doors having been closed, and it was held sufficient.

2. When a bank is the owner of a note payable at its counter, no formal presentment or refusal is necessary. It is sufficient that it remains in the bank through the day unpaid. 1 Parsons on Bills, 435; *Ogden* v. *Dobbin*, 2 Hall, 112; *Gillett* v. *Averill*, 5 Denio, 85; *State Bank* v. *Napier*, 6 Humphreys, 270.

3. The notice of protest was directed to Rocksylvania, on positive information, from one who had known Owen, and whose interest it was, that the notice should be promptly and legally given. In no case has the law required inquiry to be instituted farther. There was no occasion for inquiry after knowledge had been obtained from a reliable and credible source. Very much in point is *Bank of Utica* v. *Bender*, 21 Wend. 643. Each case stands on its own peculiar merits and circumstances. 1 Parsons on Notes and Bills, 490 (note *a*); 2 Sandf. 178, *Rawdown* v. *Redfield*, 1 Peters, 578.

4. The indorser will always be held if the notice would regularly go to the post-office nearest to him. *Follain* v. *Dupre*, 11 Rob. (La.) 454. In the case at bar, the Supreme Court will take judicial notice that on the discontinuance of Rocksylvania post-office, the mail would be sent to Iowa Falls. See Post-Office Regulations.

II. No protest was necessary.

1. The existence of a partnership between " drawer and acceptor," excuses want of notice to the drawer. *Harwood* v. *Jarvis*, 5 Sneed, 375; *Rhett* v. *Poe*, 2 How. 457; *Ful ler* v. *Hooper*, 3 Gray, 334; Byles on Bills, 223; *Taylor* v. *Young*, 3 Watts, 339; 1 Parsons on Bills, 524.

2. The drawer and acceptor having no funds in the bank at the date and maturity of the bill, no demand or notice was necessary, in particular, if Owen knew the

wool was unsold, inadequate, depreciating constantly at the date of dishonor and the bank not permitted to dispose of it. *Orear* v. *McDonald*, 9 Gill. 350, 357; 1 Parsons on Bills, 548; *Cathell* v. *Goodwin*, 1 Harris & G. 468. Pledges and securities are not funds, nor could the drawer regard them as such. 2 Story, 502, 519; 1 Parsons on Bills, 553.

3. The taking of an indemnity from the drawee excuses notice; much more, if, as in this case, the drawer before the bill was due, notified the bank that he was fully secured by the acceptor so far as his (the acceptor's) share of the bill as partner. The drawer (Owen), even testifies that his indemnity is still good, for aught he knows. *Bond* v. *Farnham*, 5 Mass. 170; *Marshall* v. *Mitchell*, 35 Maine, 221; *Watkins* v. *Crouch*, 5 Leigh, 522; *Prentiss* v. *Danielson*, 5 Conn. 175; *Barrett* v. *Charleston*, 2. McMullen, 191; *Watt* v. *Mitchell*, 6 How. (Miss.) 131; Story on Prom. Notes, § 357; Story on Bills, § 374; 3 Kent's Commentaries, 113; 4 E. D. Smith, 458.

III. Presumptive evidence of notice and waiver of notice.

1. The defendant, Owen, promised verbally, and in writing, to pay this bill, well knowing it was past due, and that he had received no notice. His frequent verbal promises are proved by the officers of the bank, and he, (Owen) in his testimony, does not deny, rebut or try to explain such opposing testimony. Then in his letter defendant declares he will pay if time is given. Time was given, and defendant does not deny it. 37 N. H. 539. Effect of defendant's letter. 2 Parsons on Bills, 498. Also where drawer placed particular funds with payer. 20 Ill. 557. Drawer verbally promised to pay at the date of the bill. 4 Peck, 525; 20 How. 496. Time asked by drawer. 10 Wend. 504; 13 Barb. 163; 19 Penn. 396; 1 Johns. Cas. 99 · 11 Wend. 629. The indorser said: "In a few days,

I will arrange the note." 20 How. 496. Promised on return from abroad to set matters to rights. Bull N. P. 276. Asked for delay for a few days. 12 Mass. 52. Generally, for many cases, see 1 Parsons on Bills, 596, 597.

2. If the drawer makes a conditional promise, and the condition is accepted, it is binding. 1 Parsons on Bills, 600; citing 8 Johns. 384; 15 La. 321, 339; 2 Camp. 106 (note). The drawer must be known (if he received no notice). 1 Parsons on Bills, 465, 602; 4 Rand. (Va.) 164; 2 N. H. 340.

3. Presumptive evidence of due notice is most beneficial and admissible, where the supposed laches is technical and has reference to the particular post-office. 1 Parsons on Bills, 626. A parallel case—*Hughes* v. *Bowen*, 15 Iowa, 448.

Damages on protest.

On page 92 of transcript, plaintiff claims three per cent damages ($222), by reason of the dishonor and protest of the draft. This is the rate fixed by law. Rev. § 1812. "Such damages may be recovered without being specially laid in the declaration." 1 Pars. on Bills, 661; 3 Barr, 474; 2 How. 711 to 737.

IV. Plaintiff is entitled to the $3,433.68 paid to it by the trustee of Andrews, on the Booze & McLane mortgage.

1. Plaintiff was the lawful owner of it on the 5th of September, 1865, prior to the illness of Andrews and prior to the trusteeship.

2. There was no usury in the mortgage. Notes bearing illegal interest are not usurious if given for *bona fide* sale of property. 2 Pars. on Bills, 406; 1 Man & R. 143; 7 B. & C. 453; *Tousey* v. *Robinson*, 1 Metc. (Ky.); 1 Paine C. C. 671; 1 Hill. on Mort. 544; 24 Wend. 164; 3 Pars. on Con. 110 and 139 (d).

3. The interest is payable in wool, a vacillating product, hence at the inception of the contract, the rate of interest could not be estimated, nor declared usurious.

4. Both Owen and Andrews consented and accepted that the trustee, Mr. Abell, should pay the plaintiff this claim in full. No plea of usury has been made by any of the defendants. Usury once paid cannot be recovered back. None but privies and parties to the Booze & McLane mortgage can plead usury. Owen is not privy nor party; he does not indorse nor guarantee the Booze & McLane mortgage; he is simply, at best, second mortgagee. 3 Pars. on Con. 122; 1 Story on Con. § 607 (a); 1 Hill. on Mort. 554; 2 Pars. on Bills, 407; 3 Pick. 184; 29 Barb. 401.

V. The cash, $1043, obtained by Andrews for the wool-clip of 1865, should not be applied on this bill of exchange.

1. The bank (plaintiff) as such had no cognizance of the conversion by Andrews of said wool, it neither authorized, aided nor abetted the transaction.

2. The powers of the vice-president of a national bank are contained in the act of incorporation, and every person is bound to take notice that he acts only in the place and absence of the president. Angell & Ames on Corp. § 299; 11 Serg. & Rawle, 267; Dunlap's Paley on Ag. 271 (note); *Magill* v. *Kauffman*, 4 Serg. & Rawle.

3. A bank is not bound by the acts or knowledge of any of its officers, if the same accrued outside, when such officer was not professing to act for the bank, but on the contrary acting as an individual, as agent for another and at the request of another. Angell & Ames on Corp. §§ 301, 304, 307, 308, 309, 311; 19 Barb. 310; 13 Iowa, 375.

4. It was not the duty of plaintiff to foreclose a chattel mortgage as soon as due, the title of the property being in dispute and previous incumbrances on the property;

nor was it the duty of plaintiff to file a bill in equity to compel Booze & McLane to obtain their money from real property which was clearly a homestead; nor was it the duty of plaintiff to hold to a levy when prior incumbrancers gave notice of their rights, and their rights were duly recorded, and the sheriff had demanded indemnity. 2 Am. Lead. Cas. 255, 256; 15 Johns. 433; 4 Wend. 570; 2 Pick. 581; 21 Id. 486; 4 Bibb, 466; 3 Barb. 580; 3 Comst. 446; 8 Wend. 194; 6 Id. 610; 13 Id. 377; 7 Leigh. 135; 6 Smedes & Marshall, 24; 1 Story's Eq. §§ 325, 326, 639; Rev. § 1819; 6 Iowa, 43; 15 Id. 365; 18 Id. 165.

As to whether the drawer of a bill or a partner can import into the contract, afterward and against the will of the holder, new duties, new relations, far more critical, delicate and dangerous, see 2 Am. Lead. Cases, 303, where the conflict of authorities is settled. Also see *Chambers* v. *Cochran*, 18 Iowa, 164; 9 Metc. 511.

*E. W. Eastman* for the defendants.

No brief found on file.

WRIGHT, J. — To set forth in detail the facts contained in this voluminous record, would most needlessly extend this opinion. We shall, therefore, briefly dispose of the several legal questions involved, referring only to such facts as seem to be necessary to their proper understanding.

I. Was there proper presentment, and notice to the drawer, of the dishonor of the bill? At maturity it was

1. BILL OF EXCHANGE: presentment after business hours.

the paper of the plaintiff. The cashier, on the proper day, presented it to the vice-president and acting teller, and payment was refused. This was after banking hours, but neither the acceptor, payor nor indorser had funds in the bank for the payment of the same. Owen, the drawer, resided at that time five miles from Rocksylvania, and six miles

First National Bank of Marshalltown v. Owen.

from Iowa Falls, in Hardin county, and about forty miles from Marshalltown, the location of the corporation plaintiff.

The cashier, after inquiry, directed notice of the dishonor to the former place, which is about one mile from Iowa Falls. It seems that the post-office at Rocksylvania had been discontinued, and its business transferred to Iowa Falls, so that letters directed to the former, were received at and distributed from the latter. There was also much testimony tending to show that the drawer had waived any want of notice; that the drawer and acceptor were partners; that the former took indemnity, etc., but of the effect of such testimony in the case, we do not propose to inquire, as we are of the opinion that there was due presentment and notice.

The presentment by the cashier for the bank, at the counter, to the paying teller, after business hours, was sufficient. 1 Parsons on Notes and Bills, 418, 419, and notes; *Garrett* v. *Woodcock*, 6 M. & S. 44; *Bank of Syracuse* v. *Hollister*, 17 N. Y. 48; *Bank of Utica* v. *Smith*, 18 Johns. 230. This is upon the hypothesis that the bank, owning a note payable at its counter, was bound to make presentment, a question we neither consider nor decide.

As to the notice, we think it fairly appears that Rocksylvania was at one time the post-office address of the drawer, and that the bank made such inquiries as were reasonably sufficient to ascertain his residence. He actually resided nearer to the place addressed, than Iowa Falls, and by the regulations of the post-office, letters thus addressed, after the discontinuance of the office, would go to the new, and, in this case, the proper one. So that it in effect was directed to the proper address. And this is especially true as Owen himself testifies that he after this, received at least one letter

2. —— notice of dishonor: by post.

at Iowa Falls, which had been directed to Rocksylvania. These facts, with the further one that he never at any time until after the commencement of this suit, claimed exemption on this ground, relieves the case, on this point, from all difficulty. 1 Parsons on Notes and Bills, 490, and note (a).

II. Plaintiff claims that the court below allowed improper credits and rejected proper charges. Defend-

3. TRUSTEE: compensation of. ants insist that proper credits were disallowed, and that they were made liable for improper charges. And in these respective claims, we have the body of the case. We shall briefly notice the several items.

Owen was in partnership with Daniel and Isaac R. Andrews in the purchase of wool. The instrument now in suit was given in place of one made in November, prior, for money loaned to invest in their business. To secure it in part, the bank held the warehouseman's receipts for the wool purchased by the firm. This wool was sold in New York, and the proceeds, $2,849.23, received by the bank, July 27th, 1865, and duly credited. Some little attempt is made to show that the wool might have been sold for more, or that defendants should have received a larger credit. Nothing is disclosed, however, to charge any one, beyond this amount, and least of all the plaintiff. This may, therefore, be taken as the true and correct amount. And the same is true as to the only other credits on the bill, $1,586.35, Nov. 13, 1865, proceeds of sheep sold by the plaintiff; and $50, Dec. 8, 1865, for lambs sold.

At the time the bill was drawn, Daniel Andrews made a mortgage to secure the same on "five hundred sheep" afterward sold, and the proceeds applied as above. At this time and, indeed, in the fall previous, Owen ceased to be a partner with Andrews. The latter was to pay

the debts. Whether plaintiff had knowledge of these facts until long after, is left in some doubt. On the 18th of April, 1865, Andrews made a mortgage on his farm to secure the sum of $2,000 to the bank, on any and all indebtedness due or to become due upon drafts then or thereafter to be executed, and particularly the bill of exchange now in suit.

There was a prior mortgage on this farm to one Stanley, as to which there is no controversy, and to which we shall hereafter refer.

McLane & Booze, of Ohio, also had a mortgage on the farm, of date Sept. 2, 1864, to secure the covenants and agreements that day made and entered into between the parties, for the sale and delivery by the mortgagees to Andrews of 543 head of sheep. McLane & Booze sold this contract and mortgage to Boardman in July, 1865. Some days afterward, in September, he sold the same to the bank; but there was no assignment in writing or actual transfer until about the 9th of October. September 26, Andrews, being on his death bed, sent for two of the bank officers and without solicitation, as far as it appears, made to one of them an absolute deed for his farm, and took a brief memorandum to the effect that it was to be sold and the proceeds applied to this debt after paying prior mortgages; and the surplus, if any, was to go to the grantor or his heirs. Andrews departed this life on the 28th, the farm was sold, and on the 28th of July, 1866, the bank realized for it $4,600.

With this brief summary of this most complicated transaction, we come to the matters of disagreement: *First.* The bank says that the party holding the title to the farm, and selling the same, was entitled to a commission or compensation for making such sale ($269.50), and that this should be deducted from the amount for which it sold. In this view we do not concur. A fair

deduction from all the facts and circumstances is that neither party expected or contemplated a charge of this kind. Indeed, it is reasonably certain that the deed was made and accepted, after conversation between creditor and debtor, as the most effective and least expensive method of further securing, and, so far as practicable, ultimately paying this debt. There was, in our opinion, no intention at the time that a commission was to be paid, and it would violate the spirit and intent of the whole transaction to now allow this amount. In this connection, however, there is an item of $35 for perfecting title, which is legitimate. So of some other smaller sums as to which there is no controversy, and which will be found in the statement made hereafter.

*Second.* Damages for the non-payment of the bill. Plaintiff claims $222, or three per cent, on the whole amount of the bill, relying on section 1812 of the Revision. This is most manifestly an after-thought, as no such claim is made in the pleadings. Not only so, but it finds no support in the law, which relates to foreign, and not inland bills.

4. BILL OF EXCHANGE: damages for non-payment: statute.

*Third.* To how much is plaintiff entitled on the McLane & Booze mortgage? Boardman was paid $2,369, and this the defendants insist is all that the bank shall be allowed. By the terms of the contract between the mortgagor and mortgagees, there was largely more than that owing, and we can conceive of no good reason why plaintiff was not entitled to the entire amount.

5. TRUST: who occupies trust: relation.

There was, at the time, no such trust relation as prohibited the purchase. The bank had then no money of Andrews', but he was largely its debtor. Nor, within any equitable rule, could the mortgagor, or any one in privity with him, or interested in his property, claim that the purchase was for his benefit. It was bought in good

faith, and paid for before the death of Andrews, and before he conveyed the land. There was no understanding or agreement that it was to be bought in, but, as far as disclosed, it was a fair, ordinary and legitimate business transaction, and plaintiff is justly entitled to the fruits of its contract.

We concede that there are some circumstances which favor the proposition that plaintiff should receive no more than the amount paid, with interest.

These are, however, more than outweighed by others in connection with the positive testimony of witnesses, explaining the whole transaction.

It is insisted, however, that the contract with McLane & Booze was usurious, and, therefore, that $2,369, the
6. USURY: contract not usurious. principal sum, is all that should be allowed. By the terms of this contract, Andrews bought 543 head of sheep, and was to pay $2,369, " and also two pounds of wool per year for each sheep so sold and delivered, for two years, the wool to be delivered at a place named, on or about the first of July in each year," etc. What the sheep were actually worth does not appear. Nor is there any thing tending to show, that the parties adopted this course to evade the statute. It was, apparently, a fair sale, the purchaser agreeing to pay a part of each year's clip in addition to the $2,369 for the sheep so purchased. If treated as interest, it was payable in property. Its value was necessarily fluctuating, and could not, at the making of the contract, be well estimated. We concede that a contract of like terms might be shown to be usurious. But it is not necessarily so. And when its good faith is not questioned by the evidence, there is no rule which would declare it usurious.

*Fourth.* The defendant Owen claims that the proceeds of the wool for 1865, amounting to $1,043.35 was received

First National Bank of Marshalltown v. Owen.

7. BILL OF EX-
CHANGE: de-
fense by
drawer: appli-
cation of
funds.

by plaintiff, or at least that in equity the bank should be held to credit him that amount. This claim was sustained in the court below, and we think erroneously. The facts were, that plaintiff, under a judgment against Andrews, rendered in July, 1865, had this wool levied upon. After the levy it was claimed by McLane & Booze, under their mortgage. The sheriff asked indemnity, it was not given and the wool was released, and the writ returned. Andrews actually sold the wool after this, received the proceeds and took a check on the bank for the amount. That the bank knew that this check was to pay for the wool, does not very satisfactorily appear. It was all paid except $236.80, which remained in the bank at the time of Andrews' death.

If the bank had been fully advised in the transaction, we do not see what equitable rule would make it incumbent upon its officers, to compel its diversion or control its application to the payment of this debt, more than any other.

As between Owen and the bank, there was no violation of good faith. The bank endeavored to have Andrews thus apply it; he refused; and this was all that Owen could possibly ask, and especially as he knew the debt unpaid, that there was a clip of that year, and took no steps to see to its application. The balance, however, not drawn out, $256.80, was not appropriated by either party, and it is equitable in our view as the defendants now ask it, that this should be applied on the debt for which plaintiff now sues. If the bank had actually applied it to the judgment, a different question would arise.

We have thus noticed the several controverted items, and find the transaction to stand thus:

First National Bank of Marshalltown v. Owen.

1. *As to the farm.*
February 1, 1866.

| | | |
|---|---:|---:|
| The bank received for this, . . . . . . . . . . . . . . . . | | $4600 00 |
| From this is to be deducted Stanley mortgage, . . . . . . . . . . . . . . . | $754 21 | |
| Taxes, . . . . . . . . . . . . . . . . . . . . . . . | 77 18 | |
| Perfecting title, . . . . . . . . . . . . . . . | 35 00 | |
| For stamps and conveyancing, . . . | 4 35 | |
| McLane & Booze mortgage, . . . . . | 2369 00 | |
| The wool from the 543 sheep for 1865, as per contract, . . . . . . . . . | 543 00 | |
| Interest on this from July 1, 1865, to February 28, 1866, . . ." . . . . . | 21 60 | |
| Allow at the same rate for eight months or from July 1, 1865, to February 28, 1866, two-thirds of a year, . . . . . . . . . . . . . . . . . . | 362 00 | |
| | $4166 34 | |
| Leaving balance against the bank of, . . . . . . . . . . . . . . . . . . . . . . . . | | 433 66 |
| 2. *Bill of exchange,* . . . . . . . . . . . . . . . . . . . | | $7430 55 |
| Protest fees, . . . . . . . . . . . . . . . . . . . . . . | | 2 30 |
| July 27, 1865. | | |
| Interest from May 15, . . . . . . . . . . . . . . . . . . . | | 89 03 |
| Deduct N. Y. wool, . . . . . . . . . . . . | $2849 23 | |
| Also balance in hands of bank on clip of 1865, . . . . . . . . . . . . . . . . . . | 236 80 | |
| | $3086 03 | |
| November 13. | | |
| Interest on balance, . . . . . . . . . . . . . . . . . . . . . | | $79 10 |
| Deduct sheep, . . . . . . . . . . . . . . . . . | $1586 35 | |
| December 8. | | |
| Interest on balance, . . . . . . . . . . . . . . . . . . . . . | | 12 20 |
| Deduct lambs sold, . . . . . . . . . . . . . | 50 00 | |

February 28, 1866.
Interest on balance, ......................        38 53
Deduct balance on farm, ........    433 66
                                   _____    _____
                                   $5156 04   $7651 76

Leaving a balance of $2495.72, for which, with interest from February 28, 1866, at six per cent, plaintiff will be entitled to judgment against both defendants. The cause will be remanded, that judgment may be entered in the court below accordingly, defendant Owen paying one-half, and the plaintiff and the other defendant each one-fourth of the costs of this appeal.

Reversed as to the appeal of plaintiff and that of defendant Andrews, and affirmed as to the appeal of defendant Owen.